**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| INTERNATIONAL UNION OF ) | |
| BRICKLAYERS AND ALLIED ) | |
| CRAFTWORKERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-0537 (RBW) |
| ) | |
| INSURANCE COMPANY OF ) | |
| THE WEST, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM OPINION**

The plaintiff brings this action to enforce an Employer's Wage, Expense, Welfare,

Pension, Annuity, Vacation and Industry Fund Payment Bond (the "Bond") executed by the

defendant, the Insurance Company of the West ("ICW"), as surety, that guaranteed certain

payments due from Refractory Engineering & Construction, Inc. ("RECON") pursuant to a

collective bargaining agreement.  Complaint ("Compl.") ¶ 1.  The plaintiff originally commenced

this action in the Superior Court of the District of Columbia ("Superior Court") on March 4,

2004.  However, on April 1, 2004, ICW removed the case from the Superior Court to this Court

pursuant 28 U.S.C. § 1441(b).  The plaintiff, the International Union of Bricklayers and Allied

Craftworkers ("IUBAC"), has now filed a Motion to Remand pursuant to 28 U.S.C. § 1447(c).

Currently before the Court are (1) the plaintiff's Memorandum of Points and Authorities in

Support of Motion to Remand ("Pl.'s Mem."); (2) the defendant's Response in Opposition to

1

Plaintiff's Motion to Remand ("Def.'s Opp'n"); and (3) the plaintiff's Reply Memorandum in Support of Motion to Remand ("Pl.'s Reply").  For the reasons set forth below, the plaintiff's motion to remand is granted.

## I.   Background

The plaintiff's complaint seeks to enforce and collect on a bond executed by the defendant.  Under the collective bargaining agreement, the plaintiff alleges that RECON was obligated to make payments to a variety of health, pension, and other funds according to a rate schedule set forth in the collective bargaining agreement for all covered work.  Compl. ¶ 6.  The defendant, as surety, guaranteed these payments.  Id. ¶¶ 1, 8-16.  The plaintiff contends that RECON failed to make the payments required by the collective bargaining agreement and therefore, the plaintiff commenced this action against the defendant surety company to enforce the terms of the bond.  According to the plaintiff's complaint, "[t]he action arises under the Bond and the laws of the District of Columbia."  Id. ¶ 2.  Specifically, the plaintiff seeks an order compelling the defendant to pay the amounts owed by RECON, in addition to accumulated interest, up to the $100,000 amount provided for by the bond.  Id. ¶ 5.

On April 1, 2004, the defendant filed a Notice of Removal of Action Under 28 U.S.C. § 1441(b) ("Def.'s Not. Removal"), alleging that this Court has original jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), and therefore the case should be removed to this Court.  Def.'s Not. Removal at 1.  Specifically, the defendant claims "that the complaint asserts a violation of a contract between an employer and a labor organization in an industry affecting commerce . . . ."  Id. at 1-2.  Because such a dispute is controlled by the Labor-Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), the defendant contends that "this

Court would have had original jurisdiction of this action had it been brought originally in this

Court." Id. at 2.  In addition, the defendant maintains "that the instant lawsuit was vexatiously

brought in the Superior Court since it is merely a companion case to a . . . lawsuit [already

pending in the United States District Court for the Central District of California]" involving the

IUBAC and Recon Refractory & Construction, Inc. ("the California lawsuit").[1]  Id.  The

defendant argues that the action before this Court and the action in California are directly related

because the case before this Court involves "a claim on the employer's bond arising from the

California suit," and that the bond in question is a requirement "under the terms of the collective

bargaining agreement at issue in the California lawsuit."[2]  Id.

## II.    The Parties' Arguments

The plaintiff argues that this matter must be remanded to the Superior Court because the

defendant "cannot meet its burden of establishing the existence of a federal question sufficient to

confer this Court with subject matter jurisdiction."  Pl.'s Mem. at 5.  The plaintiff asserts that its

cause of action "is not created by any federal law," but "rather, . . . is created by, and arises

under, the language of the bond and District of Columbia law."  Id.  The plaintiff further

---

[1] Accordingly, the defendant anticipates filing a motion to transfer this case to the United States District Court for the Central District of California.

[2] The case pending in the Central District of California was stayed pending a decision by the National Labor Relations Board ("NLRB") regarding a jurisdictional dispute between the parties, i.e., whether the NLRB or the district court had jurisdiction over the case.  Notice of Removal, Ex. 4 at 1.  According to the parties, the NLRB's decision that would be issued pursuant to section 10(k) of the LMRA, 29 U.S.C. § 160(k), would resolve this issue.  Id. at 1-2.  On July 24, 2003, the NLRB issued its opinion and concluded that the dispute was not a traditional jurisdictional dispute between two groups of employees, but rather a contractual dispute between the union and RECON over the preservation of bargaining unit work.  Indus., Prof'l and Technical Workers Union, 339 N.L.R.B. No. 97,  2003 WL 21745360, at *4-5 (July 24, 2003).  The NLRB found that, commencing in January, 2000, Recon Refractory & Construction, Inc. had assigned work ordinarily performed by members of the IUBAC to members of another union.  Id. at *5.  Thus, the NLRB concluded that it did not have jurisdiction to resolve the case.  Id.  The NLRB decision is currently on appeal to the Ninth Circuit.

contends that its claim against the defendant "does not require or depend upon the analysis, interpretation, application or construction of the LMRA, other federal statutes pertaining to collective bargaining agreements or any other federal law or provision." Id. at 7.

The plaintiff relies heavily on a case from the Second Circuit, Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 570 (2d Cir. 1995), as support for its position that a bond claim does not raise a federal question, irrespective of its impact on a collective bargaining agreement, Pl.'s Mem. at 8, and concludes that the case must therefore be remanded to the Superior Court. Id. at 10. In addition to requesting remand, the plaintiff requests that the Court order the defendant to pay, pursuant to 28 U.S.C. § 1447(c), its attorney's fees and costs incurred as a result of the inappropriate removal.

In response to the plaintiff's motion to remand, the defendant argues that under Section 301 of the LMRA, 29 U.S.C. § 185, state law claims are converted into federal claims "wherever the interpretation of labor contracts is concerned." Def.'s Opp'n at 4. Under § 301, actions between an employer and a labor organization alleging a violation of a contract "may be brought in any district court of the United States having jurisdiction over the parties." 29 U.S.C. § 185(b). As a result of this authorization, the defendant opines that § 301 preempts any applicable state law claims and mandates "a removal of the claim to federal court." Id. (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)). According to the defendant, the plaintiff's claims are dependant on the collective bargaining agreement, arguing that "[t]he bond itself expressly requires the Court to interpret" the provisions of the collective bargaining agreement, "for which there is no final finding that RECON is responsible for a breach." Id. at 8. Accordingly, the defendant posits that remand to the Superior Court is inappropriate.

4

### III.   Standard of Review

Removal of cases to federal court is derived solely from 28 U.S.C. § 1441.[3]  <u>See</u>

<u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994) (quoting 28 U.S.C.

§ 1441).  The party opposing a motion to remand bears the burden of establishing that subject

matter jurisdiction exists in federal court.  <u>See id.</u> ("The burden of establishing federal

jurisdiction is placed upon the party seeking removal.") (citing <u>Wilson v. Republic Iron & Steel

Co.</u>, 257 U.S. 92 (1921)); <u>In re Tobacco/Gov'tal Health Care Costs Litig.</u>, 100 F. Supp. 2d 31, 35

(D.D.C. 2000).  "Because federal courts are courts of limited jurisdiction, the removal statute is

to be strictly construed." <u>Kopff v. World Research Group, LLC</u>, 298 F. Supp. 2d 50, 54 (D.D.C.

2003) (citing <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 100-07 (1941); <u>Diaz v.

Sheppard</u>, 85 F.3d 1502, 1505 (11th Cir. 1996); <u>Williams v. Howard Univ.</u>, 984 F. Supp. 27, 29

(D.D.C. 1997)).  Therefore, in instances "[w]here the need to remand is not self-evident, the court

must resolve any ambiguities concerning the propriety of removal in favor of remand."  <u>Johnson-

Brown v. 2200 M St. LLC</u>, 257 F. Supp. 2d 175, 177 (D.D.C. 2003) (citing <u>Univ. of S. Alabama

v. Am. Tobacco Co.</u>, 168 F.3d 405, 411 (11th Cir. 1999); <u>Nwachukwu v. Karl</u>, 223 F. Supp. 2d

60, 66 (D.D.C. 2002)); <u>see also Mulcahey</u>, 29 F.3d at 151 ("If federal jurisdiction is doubtful, a

remand is necessary.").  "The presence or absence of federal question jurisdiction is governed by

the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a

federal question is presented on the face of the plaintiff's properly pleaded complaint."

<u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987) (citing <u>Gully v. First Nat'l Bank</u>, 299 U.S.

---

[3] 28 U.S.C. § 1441(b) provides in relevant part that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).

109, 112-113 (1936)).  "The rule makes the plaintiff the master of the claim . . . ."  <u>Id.</u>

 "One corollary to the well-pleaded complaint rule . . . is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."  <u>Metro. Life</u>, 481 U.S. at 63-64.  "When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."  <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 8 (2003).  One "select group of claims" the Supreme Court has singled out for special treatment involve claims preempted by § 301 of the LMRA.  <u>Metro. Life</u>, 481 U.S. at 63-64.  "Section 301 of the LMRA not only preempts state law but also authorizes removal of claims that purport[ ] to seek relief only under state law."  <u>Bush v. Clark Constr. & Concrete Corp.</u>, 267 F. Supp. 2d 43, 46 (D.D.C. 2003) (citing <u>Beneficial Nat'l Bank</u>, 529 U.S. at 6-7).

## IV. Legal Analysis

 The issue before this Court is whether this case presents a federal question that warrants this Court retaining jurisdiction over the plaintiff's claims.  For the reasons that follow, it is clear that this matter simply involves the defendant's obligations, as surety, pursuant to the bond as prescribed under the laws of the District of Columbia, and is not substantially dependant on the interpretation of the collective bargaining agreement.  Accordingly, this case must be remanded to the Superior Court.

## A. <u>Removal pursuant to 28 U.S.C. § 1441</u>

 "Only state-court actions that originally could have been filed in the federal court may be removed to federal court by the defendant."  <u>Caterpillar</u>, 483 U.S. at 392.  In the absence of

jurisdiction supplied through diversity of citizenship, federal subject matter or federal question

jurisdiction is a requirement to maintaining an action in federal court.  Id.  Since in this case, the

parties have not made an allegation of diversity of citizenship, the propriety of removal is

dependant on whether the case satisfies the provisions of 28 U.S.C. § 1331, which governs

federal question jurisdiction.  See Mulcahey, 29 F.3d at 151.  And as already noted, "[t]he

presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint

rule.'"  Caterpillar, 483 U.S. at 392 (citing Gully, 299 U.S. at 112-13).

The well-pleaded complaint rule "provides that federal jurisdiction can only exist when a

federal question is presented on the face of the plaintiff's properly pleaded complaint."  Id.  In

order to determine if a case presents a federal question pursuant to 28 U.S.C. § 1331, a court first

must determine if federal or state law gave rise to the action.  Mulcahey, 29 F.3d at 151.  "[T]he

vast majority of cases brought under the general federal-question jurisdiction of federal courts are

those in which federal law creates the cause of action."  Merrell Dow Pharm., Inc. v. Thompson,

478 U.S. 804, 808 (1986).  "[F]ederal-question jurisdiction is appropriate when 'it appears that

some substantial, disputed question of federal law is a necessary element of one of the well-

pleaded state claims."  Id. at 813 (quoting Franchise Tax Bd. of the State of Cal. v. Const.

Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 13 (1983)).

Based upon Merrell Dow and other Supreme Court cases, federal courts have fashioned a

two-pronged test in order to determine if a state cause of action can provide the basis for federal

removal jurisdiction.  The removing party must show "(1) that the plaintiff's right to relief

necessarily depends on a question of federal law, and (2) that the question of federal law is

substantial."  Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2003) (en banc); see also

7

McNeill v. Franke, 171 F.3d 561, 563 (8th Cir. 1999) ("Federal question jurisdiction exists only when the plaintiff's 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'") (quoting Franchise Tax Bd., 463 U.S. at 27-28); see also Jairath v. Dyer, 154 F.3d 1280, 1283 (11th Cir. 1998) (holding that a claim of an Americans with Disabilities Act violation as an element of a state law cause of action was not sufficiently substantial to confer federal question jurisdiction).

Unlike in Merrell Dow,[4] the plaintiff's complaint in this case does not even identify a federal statute as an element of its claim.  Rather, the plaintiff's complaint alleges only that its claim arises under "the Bond and the laws of the District of Columbia."  Compl. ¶ 2.  Therefore, the plaintiff's complaint does not assert that its right to relief is dependent on any question of federal law.  Admittedly, to prove it is entitled to relief under the bond, the plaintiff will have to establish that RECON defaulted on its obligations under the collective bargaining agreement. This is not sufficient to confer jurisdiction to this Court.  See Greenblatt, 68 F.3d at 570 (reversing a district court that held it had jurisdiction over a claim based on a surety bond the defendant was required to secure pursuant to a collective bargaining agreement).  This is so

---

[4] In Merrell Dow, the plaintiffs filed multi-count complaints in state court alleging a variety of common-law claims including, for example, negligence, fraud and breach of warranty. Id. at 805. However, in one count, the plaintiffs alleged that the drug on which their claims were predicated on was "misbranded" in violation of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 et. seq. Merrell Dow removed the case to federal court by alleging that the plaintiffs' action relied, in part, on claims arising under federal law. Id. at 806. In deciding whether there was a federal question, the Court noted that "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." Id. at 810. The Court reaffirmed its position that no prior case had "disturb[ed] the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." Id. at 813. The Court concluded that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treatise of the United States.'" Id. at 817.

because although the collective bargaining agreement is a contract, the agreement is not federal law, and therefore, "the fact that an element of the cause of action requires construction of the agreement does not present a federal question." Id. at 570-71.

In Greenblatt, the Second Circuit held that the district court lacked subject matter jurisdiction over a claim initiated by the guardians of an employee benefit fund against a surety company on a bond which guaranteed an employer's obligations to make benefit payments pursuant to a collective bargaining agreement. Id. at 567. In addressing whether federal question jurisdiction was conferred to the district court pursuant to 28 U.S.C. § 1331, the Court held that the "state law claim on the surety bond [did] not present a substantial federal question." Id. at 570. Noting that the plaintiff would have to prove that the employer was in default of its obligations imposed by the collective bargaining agreement, the Court held that the extent of the employer's obligations and whether it had actually defaulted on its obligations could be "resolved by construing the collective bargaining agreement, not federal law." Id.

Much like the situation in Greenblatt, resolution of this case will require the construction of the collective bargaining agreement, which although it is "'a federal contract . . . governed and enforceable by federal law,' Int'l Ass'n of Machinists v. Central Airlines, Inc., 372 U.S. 682, 692 (1963), 'the agreement itself is not federal law.'" Greenblatt, 68 F.3d at 570-71. Here, the defendant contends that in order to resolve the dispute concerning the bond, the court will have to determine, inter alia, "which employees, if any, are covered by the terms of the CBA," and the amount of the employees' wages and benefits. Def.'s Opp'n at 8. Thus, the defendant posits that a federal question, i.e., "whether a violation of the [collective bargaining agreement] occurred . . . , is apparent on the face of the Complaint." Id. However, in Greenblatt, the Court

concluded that in resolving the merits of the identical claim, the district court did not encounter

any substantial federal question.  Greenblatt, 68 F.3d at 571.  Likewise, this Court finds that no

substantial question of federal law is presented in this case and that removal of this case to

federal court pursuant to 28 U.S.C. § 1441 was not proper.  The Court now turns to the

defendant's preemption argument.

**B.    Preemption of State Law Claims**

"One corollary to the well-pleaded complaint rule . . . is that Congress may so completely

pre-empt a particular area that any civil complaint raising this select group of claims is

necessarily federal in character."[5]  Metro. Life, 481 U.S. at 63-64.  One such "select group of

claims" the Supreme Court has singled out for this special treatment are claims that are

preempted by § 301 of the LMRA.  Id. (citing Avco Corp. v. Machinists, 390 U.S. 557 (1968)).[6]

In relevant part, § 301 provides:

> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce as defined in this chapter,
> or between any such labor organizations, may be brought in any district court of the
> United States having jurisdiction of the parties, without respect of the amount in
> controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  "[T]he preemptive force of § 301 is so powerful as to displace entirely any

state cause of action 'for violation of contracts between an employer and a labor organization.'"

Franchise Tax Bd., 463 U.S. at 23.  In addition to preempting state law, § 301 of the LMRA also

---

[5] "Congress' power to pre-empt state law is derived from the Supremacy Clause of Art. VI of the Federal Constitution."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985) (citing Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23 (1824)).

[6] The Supreme Court has held that "Avco stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." Franchise Tax Bd., 463 U.S. at 23-24.

provides a vehicle for removal of claims that sought relief under state law to federal court.  See
Beneficial Nat. Bank, 539 U.S. at 6-7 (citing Avco, 390 U.S. at 557).

"Of course, not every dispute concerning employment, or tangentially involving a
provision of a collective bargaining agreement, is pre-empted by § 301 or other provisions of the
federal labor law."  Allis-Chalmers, 471 U.S. at 211.  "[W]hen resolution of a state-law claim is
substantially dependant upon the analysis of the terms of an agreement made between the parties
in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted
by federal labor-contract law."  Id. at 220 (emphasis added) (citation omitted).  In other words,
state law is preempted by § 301 of the LMRA if its application requires the interpretation of a
collective bargaining agreement.  See Lingle v. Norge Div. Of Magic Chef, Inc., 486 U.S. 399,
413 & n.12 (1988) (holding that while federal law would govern the interpretation of the
collective bargaining agreement, the resolution of a state law claim, unless otherwise preempted,
may depend on both state law analysis and separate interpretation of the collective bargaining
agreement).  A number of cases from the Supreme Court provide guidance on when § 301
preempts state claims.

In Caterpillar, the Supreme Court affirmed the Ninth Circuit's opinion holding that the
case had been improperly removed to federal court.  Caterpillar, 483 U.S. at 399.  The case
involved an action where former employees sued their former employer, Caterpillar Tractor Co.
("Caterpillar"), alleging that the company had breached individual oral employment contracts
with them.  Id. at 388-90.  Caterpillar removed the action to federal court arguing that the
individual employment contracts were actually part of the framework of a collective bargaining
agreement which covered the parties' employment relationship.  Id. at 390.  The former

11

employee plaintiffs took exception to Caterpillar's position and moved for the district court to remand the action to state court.  Id.

 In response to the remand petition, Caterpillar asserted "that respondents' state-law contract claims [were] in reality completely pre-empted § 301 claims, which therefore arise under federal law."  Id. at 394.  In rejecting Caterpillar's positions, the Supreme Court held that the company's "basic error" in asserting that the employee's state-law contract claims were completely pre-empted by § 301 was "its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert certain legal rights independent of that agreement, including state law contract rights, so long as the contract relied upon is not a collective bargaining agreement."  Id. at 396 (emphasis in original).  Here, this Court concludes that the circumstances in Caterpillar are analogous to the situation in this case.  Like the individual employment contracts in Caterpillar, the bond in this case does not rely on the collective bargaining agreement.  Only RECON's obligation to make contributions to the fund described in the collective bargaining agreement and RECON's obligation to obtain a bond to secure those contributions arise from the collective bargaining agreement.  Collective Bargaining Agreement at art IX.G.

 Furthermore, in Allis-Chalmers, the Supreme Court held that an employee's state law claim of bad faith handling of an insurance claim "should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement or dismissed as pre-empted by § 301 . . . ."  Allis-Chalmers, 471 U.S. at 220-21 (citation omitted).  The question presented to the Supreme Court in Allis-Chalmers was whether the state tort law remedy for bad faith handling of an insurance claim could apply to a claim for disability benefits

12

where the disability benefits were authorized by a collective bargaining agreement.  Id. at 204.

Because the "parties' agreement as to the manner in which a benefit claim would be handled

[was] necessarily relevant to any allegation that the claim was handled in a dilatory manner," id.

at 218, the Court concluded that the "right" the employee had asserted was "rooted in contract,

and the bad-faith claim [brought by the employee] could have been pleaded as a contract claim

under § 301."  Id. at 220.  The Court further noted that without federal law governing the

employee's claim, the meaning of the collective bargaining agreement's provisions at issue

"would be subject to varying interpretations, and the congressional goal of a unified federal body

of labor-contract law would be subverted."  Id.  However, the Court noted "the narrow focus" of

its ruling in Allis-Chalmers and cautioned that "[t]he full scope of the pre-emptive effect of

federal labor-contract law remains to be fleshed out on a case-by-case basis."  Id.

      Conversely, in Lingle, the Supreme Court reversed the district court's and Seventh

Circuit's decisions holding that § 301 of the LMRA preempted an employee's state law

retaliatory discharge claim.  Lingle, 486 U.S. at 401.  Lingle brought an action alleging that she

had been terminated because she had filed a worker's compensation claim.  Id.  The Supreme

Court considered in Lingle the question of "whether an employee covered by a collective

bargaining agreement that provides her with a contractual remedy for discharge without just

cause may enforce her state-law remedy for retaliatory discharge."  Id.  Because the state law

claim did not require the interpretation of the collective bargaining agreement, the Court held that

the state law remedy for retaliatory discharge was "'independent' of the collective bargaining

agreement in the sense of 'independent' that matters for § 301 pre-emption purposes . . . ."  Id. at

407.

Here, this Court concludes that § 301 does not preempt the plaintiffs' District of

Columbia (state law) claim.  First, § 301 does not even apply to this case because it permits

"[s]uits for violation of contracts between an <u>employer</u> and a <u>labor</u> <u>organization</u> representing

employees in an industry affecting commerce . . . or between any such labor organizations . . . ."

29 U.S.C. § 185(a) (emphasis added).  The only signatory to the collective bargaining agreement

that is a party in this case is the plaintiff.  The defendant (ICW) is not a not a signatory to the

collective bargaining agreement, nor is it specifically implicated by the agreement.  Instead, the

signatories to the collective bargaining agreement are RECON (the employer) and the IUBAC

(the labor organization).  Accordingly, since a § 301 claim is between an employer and a labor

organization, and ICW qualifies as neither, § 301 does not preempt the state law claim in this

case.

The defendant asserts that non-parties to a collective bargaining agreement may remove

lawsuits arising under § 301 to federal court citing <u>Wooddell v. IBEW, Local 71</u>, 502 U.S. 93

(1991) as authority for its position.  Def. Opp'n at 17.  However, <u>Wooddell</u>, relying principally

on <u>Smith v. Evening News</u>, 371 U.S. 195 (1962), specifically held that "[i]ndividual <u>union</u>

<u>members</u>, who are often the beneficiaries of provisions of collective-bargaining agreements, may

bring suit on these contracts under the [LMRA]." <u>Id.</u> at 101 (emphasis added).  The defendant

alleges that <u>Wooddell</u> provides that "[t]he keystone for determining whether Section 301

jurisdiction exists over a non-signatory to the collective bargaining agreement is whether rights

or duties of the non-signatory are stated in the terms and conditions of the bargaining

agreement." Def. Opp'n at 17.  Contrary to the defendant's assertion, <u>Woodell</u> simply does not

support its position on removal.

14

Again, this case is analogous to Greenblatt where the Second Circuit addressed the question of whether an action by the board of trustees of an employee benefit fund against a surety company guaranteeing a bond on an employer's obligation to make payments to the fund under a collective bargaining agreement raised a federal question. Greenblatt, 68 F.3d at 567. Among other theories potentially supporting federal jurisdiction over the matter in Greenblatt, the court there also addressed whether § 301 of the LMRA preempted the state law claim that had been brought on the bond that had been issued that case. Id. at 571. With respect to this question, the court held that in order to trigger preemption by § 301, the claim must present a dispute within the scope of § 301. Id. at 572. In other words, "at a minimum the defendant must have breached some duty created by a labor contract to be liable for a violation" under § 301. Id. Since the surety company in that case had no duty arising under the collective bargaining agreement, its "duty to pay upon the bond was the creature of that instrument alone, and thus the district court had no jurisdiction under § 301 to hear this claim." Id.

Here, ICW is a surety that is not a party to, much less a beneficiary of, a collective bargaining agreement. ICW has no duties or obligations under the agreement. Rather, any duties and obligations imposed on ICW are based exclusively on the surety agreement. Thus, § 301 does "not provide a cause of action on the bond . . . ," id. at 572, and cannot be the basis for federal question jurisdiction based on preemption because "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." Allis-Chalmers, 471 U.S. at 211.

Moreover, even if this Court were to conclude that the defendant surety is a proper party under the plain language of § 301, the legal claims raised by the plaintiff are not substantially

15

dependant upon an interpretation of the collective bargaining agreement. <u>Bush v. Clark Constr. & Concrete Corp.</u> illustrates when a state law claim is substantially dependant upon the collective bargaining agreement. <u>Bush</u>, 267 F. Supp. 2d at 43. In <u>Bush</u>, a former employee brought an action in Superior Court alleging that Clark failed to pay his wages under the terms of a collective bargaining agreement between Clark and the union to which Bush was a member. <u>Id.</u> at 44-45. Subsequently, Clark removed the case to federal court. <u>Id.</u> at 45. In addressing the issue of whether Clark's removal was proper, the Court held that § 301 "preempts [the] plaintiff's claim for recovery of wages under the CBA since the claim is substantially dependant on terms of the CBA and the Court must construe the CBA to resolve the plaintiff's claim." <u>Id.</u> at 46. The district court reached this conclusion because the timing of the plaintiff's final paycheck as well as his rights to any additional compensation were governed by a specific article of the collective bargaining agreement, which the court found was "the sole basis for [the plaintiff's] purported state law claim for recovery [of] wages." <u>Id.</u>

Here, no particular article of the collective bargaining agreement makes reference to ICW or its obligations under the bond. The bond is therefore the only document which establishes the duties and obligations of ICW, and it clearly sets forth the conditions giving rise to ICW's liability. And the bond expresses the potential monetary liability of the surety in no uncertain terms, <u>i.e.</u>, the liability of the surety will not exceed the penal sum of $100,000. Compl., Ex. 2. Given the fact that the extent of the surety's liability is well defined by the bond, the defendant's argument that it is impossible to determine the appropriate damages from the bond alone is groundless. To make that determination, a court must simply determine what contributions RECON failed to make and to what extent the defendant is obligated to make those contributions

16

under the bond.  Accordingly, federal question jurisdiction is lacking and this case must be

remanded to the Superior Court pursuant to 28 U.S.C. § 1447(c).

## C.    Attorney's Fees and Costs

Finally, this Court will address the plaintiff's request that this Court order the defendant

to pay the plaintiff's attorney's fees and costs incurred as a result of improper removal.  Under

28 U.S.C. § 1447(c) "[a]n order remanding the case may require payment of just costs and any

actual expenses, including attorney fees incurred as a result of the removal."  The authority of the

Court to impose such payment on the party opposing removal lies within its discretion.  See

Weigert v. Georgetown Univ., 43 F. Supp. 2d 5, 7 (D.D.C. 1999) (quoting from the Commentary

on the 1988 Revision of Section 1447, in a case where the Court decided "not to exercise its

discretion to award fees and costs").  "The award of costs on remand is usually appropriate only

when the non-removability of the action is obvious."  Ibrahim v. 1417 N. Street Assocs., L.P.,

950 F. Supp. 406, 408 (D.D.C. 1997).  Here, the question of removability of the action was

certainly not "obvious," and therefore this Court will not award the plaintiff its fees or costs.

## VI.    Conclusion

Based on the foregoing, the Court concludes that the defendant has failed to meet its

burden of establishing that federal question jurisdiction is vested in this Court.  This conclusion

is called for because the claims here are based upon state law, not federal law, and any

interpretation of federal law will be, at most, minimal.  Accordingly, this case must be remanded

back to the Superior Court.  However, because of the complex legal questions raised by this

matter, the Court declines to exercise its authority to require the defendant to pay the plaintiff's

attorney's fees and costs resulting from the improper removal to this Court.

17

**SO ORDERED** on this 30th day of March, 2005.[7]

REGGIE B. WALTON
United States District Judge

---

[7] An Order consistent with this Court's ruling accompanies this Memorandum Opinion.